**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE O.N. EQUITY SALES CO, | : | Civil Action No. 07-2703 (FLW) |
| Plaintiff, | : | |
| v. | : | |
| STEPHEN J. HOEGLER, | : | |
| Defendant. | : | |
| THE O.N. EQUITY SALES CO, | : | Civil Action No. 07-3211(FLW) |
| Plaintiff, | : | |
| v. | : | |
| H. PETER WEISS, | : | **OPINION** |
| Defendant. | : | |

**WOLFSON, District Judge:**

Before the Court are five identical motions filed in each of the above-captioned consolidated cases: (1) Plaintiff The O.N. Equity Sales Company's ("Plaintiff" or "ON Equity") Motion for Preliminary Injunction; (2) Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits; (3) Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability; (4) Defendants, Stephen J. Hoegler (" Hoegler") and H. Peter Weiss' ("Weiss")(collectively, "Defendants") Motion to Compel Arbitration; and (5) Plaintiff's Motion for Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration Pending Discovery to be Taken on the Issue of Arbitrability.  Defendants, individual

investors, filed arbitration actions against ON Equity with the National Association of Securities Dealers (NASD).  Plaintiff has filed the instant cases to enjoin Defendants from proceeding in the arbitration actions, and Defendants have moved to compel Plaintiff to arbitrate the parties' claims pursuant to NASD *Code Arb. P. R.* 10301.  For the forgoing reasons, Defendants' Motion to Compel Arbitration is **GRANTED**; Plaintiff's Motion for Preliminary Injunction is **DENIED**; and all other of Plaintiff's motions herein referenced are **DENIED** as moot.

## **FACTUAL BACKGROUND**

Plaintiff is a full service retail broker-dealer registered in all fifty states.  Non-party Gary Lancaster ("Lancaster") became one of Plaintiff's registered agents on March 23, 2004 until his termination date of January 3, 2005.  On or about March 17, 2003, before becoming affiliated with Plaintiff, Lancaster made available a Private Placement Memorandum (the "Memorandum") for the Lancrop Fund Business Trust ("Lancorp Fund").   Lancaster also served as trustee of the Lancrop Fund.  Individuals interested in purchasing shares in the Lancorp Fund were required to review the Memorandum and execute a Lancorp Financial Fund Business Trust Subscription Agreement  (the "Subscription Agreement") to subscribe to the Memorandum.  Pursuant to the terms of the Subscription Agreement, the amount paid by investors was initially deposited into an escrow account and held in the account until the closing date.  By signing the Subscription Agreement, investors agreed that they "may not cancel or revoke" the Subscription Agreement.  However, under the terms of the Memorandum, the Lancorp offering was subject to "withdrawal, cancellation, or modification" by Lancorp without notice.  Hoegler signed the Subscription Agreement on March 23, 2004, and

Weiss signed his agreement on November 25, 2003.[1]

In April 2004, after Lancaster became a registered representative of Plaintiff, he notified Defendants that a material condition of their investment had changed; specifically, Lancorp had replaced the insurance component on their proposed investments.  At that time, Defendants were required to either confirm their agreement to invest in the Lancorp Fund and acknowledge the change, or request withdrawal of their funds.  Shortly thereafter, both Defendants acknowledged the changes in the Lancorp offering and reconfirmed their subscriptions.  In fact, Hoegler not only opted not to seek for a return of his funds (he had written his first check for $90,000 to Lancorp on March 29, 2004), but apparently invested additional funds.  Similarly, Weiss did not opt out and invested more money in the Lancorp Fund.  In a letter dated June 14, 2004, Lancaster advised Defendants that the Lancorp Fund "officially became effective as of May 14, 2004."  Defendants' Motion at Exhibit 2.  After May 2004, Lancorp invested a significant portion of its funds in Megafund, which was later discovered to be a Ponzi scheme.  As a result, many of Lancorp's investors, including Defendants, sustained significant losses, and Lancorp was placed in receivership.

In early 2007, each Defendant initiated an arbitration proceeding before NASD relating to their investments in the Lancrop Fund; each alleged that Lancaster sold Lancorp shares through misrepresentations, failures to disclose, breach of fiduciary duty and contract, and violations of state and federal securities laws, and that ON Equity failed to supervise Lancaster while he was its agent. The NASD has instructed Plaintiff that it is "required by the rules of the NASD Dispute resolution to arbitrate this dispute."  *See* Defendant's Motion at Exhibit 1.

ON Equity then filed two separate Complaints with this Court for declaratory and injunctive

---

[1]Weiss later amended his agreement on February 25, 2004.

3

relief against Defendants.  Specifically, ON Equity requests a declaration from this Court that "Plaintiff has no obligation to arbitrate the NASD Actions" and "has no obligation to arbitrate any claims regarding or relating to the Lancorp Fund" and also seeks to enjoin Defendants from proceeding with the arbitration before the NASD.  Defendants move to compel Plaintiff to arbitrate before the NASD.

**DISCUSSION**

### I.      Motion to Compel Arbitration

In the present case, the Court shall first focus on the standards for compelling arbitration. If the requirements for arbitration are met, then necessarily, the request for a preliminary injunction against arbitrating the parties' disputes would correspondingly fail.  "[A]rbitartion is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)(citations omitted); *see also Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 868 F.2d 573, 576 (3d Cir. 1989)(per curiam).  "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 183 (2002)(citations omitted); *see also Laborers' Int'l Union of N. Am.*, 868 F.2d at 576.  When determining whether the parties entered into a valid arbitration agreement, the court "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid."  *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1996)(citing 9 U.S.C. § 2).  The "court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate."  *Id.*  If the court finds there is an agreement to

4

arbitrate, the disposition of the merits is left to the arbitrator. *Id.*

The Third Circuit has set forth a two-prong inquiry for courts to use when determining whether to compel arbitration. Under this two-prong test, the questions posed are: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted). Additionally, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

In the case at bar, although the Court finds no arbitration agreement in any contract between ON Equity and Defendants, nonetheless, Plaintiff, as a member of the NASD, is bound to follow the rules and regulations of the NASD, including the NASD Arbitration Code. *See The O.N. Equity Sales Co. v. Emmertz*, No. 07-2670, 2007 U.S. Dist. LEXIS 93405 (E.D. Pa. Dec. 19, 2007). Specifically, the Code requires "the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association" that is "between or among members or associated persons and public customers." *NASD Code Arb. P.R.* 10101. As such, as the Code prescribes, "any dispute, claim, or controversy eligible for submission under Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer." *R.* 10301(a). Defendants have demanded arbitration under this

particular Rule under the Code, and the Code requires Plaintiff to arbitrate under Rule 10301(a), (1) if Defendants are customers of Plaintiff; and (2) if the dispute arose in connection with the Plaintiff's business or in connection with Lancaster's activities.

      A.    *Defendants are Customers within the Meaning of the Code*

ON Equity does not dispute it is a NASD member, thus, it is subject to the arbitration rules of the NASD.  However, Plaintiff contends that it should not be compelled to arbitrate Defendants' claims because their allegations of misrepresentations and omissions that fraudulently induced them to invest in the Lancorp Fund occurred prior to Lancaster's association with Plaintiff; as such, Defendants are not customers within meaning of the Code.

Neither the Supreme Court nor the Third Circuit has defined "customer" as used in the Code, and the Code itself does not explicitly define the term.  However, the General Provisions section of the NASD Rules provides that its definitions are to apply unless the context provides otherwise.  When defining customers, the General Provisions section states that "[t]he term 'customer' shall not include a broker or dealer."  *R.* 0120(g).  As the Code does not provide another definition of the term customer, the definition from the General Provisions section applies here.  *See Emmertz*, 2007 U.S. Dist. LEXIS 93404 at 17-18. *see also Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1368 (11th Cir. 2004)(the Eleventh Circuit held that the definition of customers withing Rules 10101(c) and 10301(a) means anyone that is not a broker or dealer).  Indeed, numerous other courts that have been confronted with almost the identical issues involving the same Plaintiff, ON Equity, and other investors who had purchased shares in the Lancrop Fund during the same period as Defendants in this case, have held that the investors are customers within the meaning of the Code.  *See, e.g.*, *The O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d. 761, 769 (N.D. Iowa 2007); *The O.N. Equity Sales*

*Co. v. Venrick*, 508 F. Supp. 2d 872, 875-76 (W.D. Wash. 2007); *The O.N. Equity Sales Co. v. Thiers,* No. 07-305, 2008 U.S. Dist. LEXIS 3765, at *10-11 (D. Ariz. Jan. 10, 2008);  *The O.N. Equity Sales Co. v. Steinke,* 504 F. Supp. 2d 913, 916-17 (C.D. Cal. 2007); *The O.N. Equity Sales Co. v. Wallace,* No. 07-0859, 2007 U.S. Dist. LEXIS 84945, at *7-8 (S.D. Cal. Nov. 15, 2007); *The O.N. Equity Sales Co. v. Rahner,* No. 07-1323, 2007 U.S. Dist. LEXIS 90197, at *17-18 (D. Colo. Nov. 30, 2007); *The O.N. Equity Sales Co. v. Gibson,* 514 F. Supp. 2d 857, 864 (S.D. W. Va. 2007); *The O.N. Equity Sales Co. v. Samules,* No. 07-1091, 2007 U.S. Dist. 90332, at *15-16 (M.D. Fla. Nov. 30, 2007).

Nonetheless, Plaintiff, essentially ignoring this recent spate of precedent against it, relies on *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) for its claim that Defendants here are not customers.  In *Wheat*, the Eleventh Circuit held that "customer status for the purposes of the 'customer' requirement of [the] NASD Code . . . must be determined as of the time of the events providing the basis for the allegations of fraud."  *Id.*  The Court finds *Wheat*'s holding inapplicable here because the *Wheat* investors' only claim was that the securities agent, like Lancaster, made material representations to them – but not while associated with the NASD member. There, the investors did not make any allegations of wrongdoing that occurred after the NASD member became associated with the person or institution accused of fraud.  However, here, Defendants' pleadings include allegations beyond misrepresentations made prior to Lancaster joining ON Equity.  Defendants allege, *inter alia*, that Plaintiff failed to adequately supervise Lancaster. Thus, Defendants allegations clearly encompass more than *Wheat*'s narrow claim.  Moreover, some of the specific actions regarding Defendants' investments in Lancrop, including the actual investment of Defendants' funds in Lancorp, took place while Lancaster was affiliated with Plaintiff.  As such,

7

*Wheat* is inapposite, and the Court holds that Defendants were customers of Plaintiff through Lancaster as its associated person for the purposes of *R.* 10301(a).[2]  *See* Part B, *infra*.

       B.     *Lancaster is an Associated Person under the Code and the Dispute Arose in Connection with the Business*

The Second requirement for arbitration under the Code is that the dispute arose out of or in connection with the business of any member of the activities of an associated person.  Plaintiff contends that the dispute did not arise in connection with its business or in connection with Lancaster's activities while he was affiliated with the firm.  According to Plaintiff, Defendants' claims solely arose from Lancaster's alleged material misrepresentations and omissions that induced their original decision to invest in Lancorp Fund, and these events transpired when Lancaster issued the Memorandum and Defendants signed the Subscription Agreement, all before Lancaster became an agent of Plaintiff on March 23, 2004.  ON Equity also contends that when Defendants signed the documents their offer to purchase became irrevocable.

The Court finds Plaintiff's arguments unavailing, particularly since Defendants' NASD pleadings include claims regarding ON Equity's actions, specifically, that Plaintiff negligently failed to supervise Lancaster; therefore, the pleading is not based solely on Lancaster's misrepresentations.  In fact, within Defendants' NASD statements of claim, they contend that Plaintiff  allegedly failed to act while Lancaster was an agent for the firm.  While Third Circuit has not dealt with this issue, other circuit courts have found that a negligent failure to supervise claim satisfies the requirement

---

[2]Plaintiff relies on *Hornor, Townsend & Kent, Inc. v. Hamilton*, No. 01-2979, 2004 U.S. Dist. LEXIS 20789 (N.D. Ga. Sep. 20, 2004) and *Gruntal & Co. Inc. v. Steinberg*, 854 F. Supp. 324 (D.N.J. 1994) for similar contentions.  However, these cases involved alleged fraudulent transactions *prior* to the securities agent becoming affiliated with the firm.  In the current situation, Plaintiff's alleged negligent supervision of Lancaster occurred when Lancaster became, and while he was, an agent for the firm.

that the dispute arose in connection with a NASD member's business.  *See Multi-Fin. Sec. Corp.*, 386 F.3d. at 1370 (concluding that a "claim of negligent supervision satisfies the Code's second arbitration condition"); *Vestax Sec. Corp. V. McWood*, 280 F.3d 1078, 1082 (determining that a claim arising from a NASD-member firm's lack of supervision of its brokers arises in connection with its business).  Moreover, ON Equity "overstates" the importance of the fact that Defendants' execution of the Subscription Agreement made their investment "irrevocable."   Although Defendants' offer to purchase may have been irrevocable at the time it was made, Lancaster provided Defendants the opportunity to either withdraw or confirm their participation in April 2004 when he notified them of a material change in the investment.  At that time Lancaster was already an agent for Plaintiff.  Both Defendants subsequently reconfirmed their pledges – while Lancaster was at ON Equity.  Accordingly, the second requirement for arbitration under the Code is satisfied because Defendants' pleadings include a claim for negligent supervision and allege pertinent activities that took place while Lancaster was an agent for Plaintiff.  Since both elements under the Code are susceptible to an interpretation that would compel arbitration, and since federal policy favors arbitration, resolution of the parties' dispute on the merits should be adjudicated in arbitration.[3]

---

[3]Plaintiff argues that the Court should allow certain discovery and a hearing before taking Defendants' version of the facts as alleged in their NASD complaints.  For this proposition, Plaintiff relies on *Sims. v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947), which states that when the parties' papers are conflicting, the conflicts must be resolved by oral testimony.  *Id.*  Plaintiff is attempting to convert liability issues into arbitrability issues, which the Court will not engage in since it forces the Court to make certain rulings on the merits.  *See Emmertz*, 2007 U.S. Dist. LEXIS 93405 at *30 (under similar fact pattern and legal arguments, the court held that Plaintiff was essentially seeking a determination of the merits of defendant's claims, which a court cannot do when determining the issue of arbitrability)(citing *AT&T Tech, Inc.*, 475 U.S. at 650).  Instead, the Court shall focus on those facts required to satisfy the two-part test for arbitrability under Rule 10301.  The facts that matter in this current motion are undisputed: Defendants were customers of Plaintiff through Lancaster.  "This undisputed fact patter is somewhat common, and the overwhelming response is that the case is subject to arbitration.  More importantly, this fact

## II.        Motion for Preliminary Injunction

In an action seeking to enjoin an arbitration proceeding, the traditional criteria for granting injunctive relief apply.  These factors are (1) whether the movant can show a reasonable probablity of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether granting the requested injunctive relief will cause greater harm to the nonmoving party; and (4) whether granting the injunction is in the public interest.  *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002)(citations omitted).

Having determined that the parties should arbitrate the claims, Plaintiff clearly cannot satisfy the first element because it would not be able to establish any likelihood of success on the merits of its claim that it is not required to arbitrate its dispute with Defendants.  Moreover, there is no threat of irreparable harm to Plaintiff if it is compelled to arbitrate the parties' disputes because Plaintiff is not precluded from advancing its substantive arguments in arbitration.  No parties will be harmed by resolving these disputes in arbitration.  Finally, the Court finds that the public interest does not warrant issuance of a preliminary injunction in this instance.  Accordingly, a balancing of the factors weighs in favor of denying Plaintiff's request for injunctive relief.

It is appropriate to note that identical cases have been filed by Plaintiff in other courts.  All of the courts, cited below, have granted defendants' motion to compel arbitration, with a majority disallowing Plaintiff to engage in discovery.   *See  Pals*, 509 F. Supp. 2d. at 761; *Venrick*, 508 F. Supp. 2d. at 872; *Thiers,* 2008 U.S. Dist. LEXIS 3765;  *Steinke,* 504 F. Supp. 2d. at 913; *Wallace,*

---

pattern falls wholly within the clear language of Rules 10101 and 10301, which focus first whether the investor is a customer, and second on whether the dispute arose in connection with the business of the member." *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1346 (11th Cir. 2002)(citations omitted).

2007 U.S. Dist. LEXIS 84945; *Rahner,* 2007 U.S. Dist. LEXIS 90197; *Gibson,* 514 F. Supp. 2d. at 857; *Samules,* 2007 U.S. Dist. 90332; *Emmertz*, 2007 U.S. Dist. 93405; *The O.N. Equity Sales Co. v. Prins*, No. 07-3075, 2007 U.S. Dist. LEXIS 82748 (D. Minn. Nov. 7, 2007); *The O.N. Equity Sales Co. v. Robinson*, 2007 WL 2840477 (E.D. Va. Sep. 27, 2007). The Court agrees with these holdings.

### III.    Conclusion

For the reasons set forth herein, Plaintiff ON Equity is compelled by this Court to participate in arbitration pursuant to the NASD Arbitration Code. Accordingly, Defendants' Motion to Compel Arbitration is GRANTED; Plaintiff's Motion for Preliminary Injunction is DENIED; and Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits, Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability, and Motion for Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration Pending Discovery to be Taken on the Issue of Arbitrability are denied as MOOT.